UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
STEPHEN KELLY,                                              **DOCKET NO.: CV-21-6685**

                                    Plaintiff,

                    -against-

COUNTY OF SUFFOLK, SUFFOLK COUNTY
POLICE DEPARTMENT, KEVIN MULLER (in his
official and personal capacity),

                                                            **COMPLAINT**


                                    Defendants.             ***JURY TRIAL DEMANDED***
--------------------------------------------------------------------X

Plaintiff, **STEPHEN KELLY**, by and through his attorneys, the Law Offices of Frederick

K. Brewington, as and for the following *Complaint* and state and allege as follows:

### PRELIMINARY STATEMENT

1.      This is a civil action seeking monetary relief, a declaratory judgment, compensatory

and punitive damages, disbursements, costs and fees for violations of the Plaintiff's rights brought

pursuant to 42 U.S.C. § 1983. The claims are for the violation of PLAINTIFF's substantive due

process rights pursuant to the Fifth and Fourteenth Amendments of the United States Constitution,

excessive force, false arrest, violations of the American's with Disabilities Act, municipal liability,

recklessness, intentional and careless actions of the DEFENDANTS SUFFOLK COUNTY,

SUFFOLK COUNTY POLICE DEPARTMENT and KEVIN MULLER.

2.      Specifically, the PLAINTIFF alleges that the DEFENDANTS (collectively and

individually) negligently, wantonly, recklessly, intentionally, and knowingly sought to and did

wrongfully deprive PLAINTIFF of his Constitutional rights, pursuant to the above mentioned

statutes and causes of action by committing acts under color of law and depriving the PLAINTIFF

of rights secured by the United States Constitution and laws of the State of New York.

3.      PLAINTIFF alleges that DEFENDANT KEVIN MULLER, who at the times relevant to this Complaint was an agent, employee and/or servant of DEFENDANTS SUFFOLK COUNTY and SUFFOLK COUNTY POLICE DEPARTMENT who utilized excessive and deadly force to wrongfully physically attack and callously shoot PLAINTIFF, causing him severe and permanent physical, mental and emotional impairments. The actions of DEFENDANT MULLER led PLAINTIFF to have multiple procedures and surgeries as result of enduring such a violent and unnecessary attack.

4.      PLAINTIFF further alleges that DEFENDANTS SUFFOLK COUNTY and SUFFOLK COUNTY POLICE DEPARTMENT were negligent in training, hiring and supervising its Police Officers, employees, representatives, and/or agents, specifically DEFENDANT MULLER based on his past violent and aggressive on and off duty actions. DEFENDANTS SUFFOLK COUNTY and SUFFOLK COUNTY POLICE DEPARTMENT had knowledge of or should have reasonably known about DEFENDANT MULLER's violent history.

### JURISDICTION

5.      The jurisdiction of this Court is invoked under 28 U.S.C. §§ 1331 and 1343.

6.      Venue in the Eastern District of New York is proper under 28 U.S.C. § 1391, based on the fact that PLAINTIFF resides in Suffolk County. Furthermore, the place where the events and violations herein alleged occurred was in Suffolk County.

### PARTIES

7.      PLAINTIFF STEPHEN KELLY (hereinafter "Mr. Kelly" or "PLAINTIFF") is a natural person, who resides in the County of Suffolk, State of New York, at all times relevant herein is a citizen of the United States.

2

8.      DEFENDANT COUNTY OF SUFFOLK (hereinafter "COUNTY"or "SUFFOLK COUNTY") is and was a duly constituted municipal corporation of the State of New York, and is and was the employer of the Suffolk County Police Department, and Kevin Muller at the times relevant to this complaint.

9.      DEFENDANT   SUFFOLK   COUNTY   POLICE   DEPARTMENT (hereinafter"SUFFOLK COUNTY POLICE DEPARTMENT ") is, and was an entity/agency of the COUNTY OF SUFFOLK, located at 30 Yaphank Ave., Yaphank, New York 11980.

10.     DEFENDANT KEVIN MULLER (hereinafter "Defendant Muller" or "Muller") was at the times relevant to this Complaint, employed by COUNTY and SUFFOLK POLICE DEPARTMENT as a Police Officer. Defendant Muller, at the times relevant to this Complaint, worked specifically out of Suffolk County's 5th Precinct located at 125 Waverly Ave., Patchogue, New York 11772.

## FACTS

11.     Stephen Kelly (hereinafter "Mr. Kelly" or "Plaintiff") is a 36 year old man who resides in Suffolk County and lives with the mental health disability of schizophrenia. Mr. Kelly has been receiving Social Security Disability (SSD) since he was a teenager. Stephen Kelly has been suffering from the mental impairment of schizophrenia, of which there was notice and a clear record, that substantially limits his life activities.

12.     Before coming in contact with Defendant Muller and after, the severity of Mr. Kelly's impairment meets the criteria of Section12.04 of 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d) and 404.1525). The current severity of Plaintiff's impairment includes sudden changes in mood and heightened anxiety which leads to isolation and seclusion from others. Schizophrenia

3

causes marked restrictions in activities of daily living, marked difficulties in maintaining social functioning, and marked difficulties in maintaining concentration.

13.     Every 3rd day of the month Mr. Kelly's SSD funds would be deposited into his bank account in the early hours of that day. It was a monthly routine for Mr. Kelly to walk to a local 7/11 store, make a withdrawal of his SSD money, purchase cigarettes and a snack, then return home.

14.     The early hours of December 3, 2018 did not start off any different then the months prior, however due to the heinous and brutal attack of Defendant Kevin Muller, Mr. Kelly would not be permitted to peacefully return to his apartment that morning.

15.     On December 3, 2018, Mr. Kelly left his apartment at approximately 1:00 am to make his routine walk to the 7/11 store on 444 Waverly Ave., Patchogue, NY 11772, which is about a mile away from his apartment.

16.     Prior to leaving his apartment, at 12:38 am, Mr. Kelly made a call to 1-888-741-1115 to check if his SSD funds had been direct deposited into his bank account. At 1:19 am, Mr. Kelly called 1-888-741-1115 for a second time to confirm that his SSD had been deposited into his account.

17.     Upon arrival at the 7/11 store, Mr. Kelly followed his usual practice. He made a two hundred dollar ($200) withdrawal from his bank account, and bought cigarettes, soda and a snack. After withdrawing his money and making his purchases, Mr. Kelly went outside of the 7/11 to smoke a cigarette, and then began his walk to return to his apartment. Mr. Kelly, through no fault on his own, did not make it back to his apartment that early morning.

18.     At or around 2:18 am, Mr. Kelly began walking back to his apartment from the 7/11 when he observed a black truck pull up next to him.

4

19.     The male driver (now known as Defendant Muller) got out of the black truck and stated that he was a police officer. However, the driver claiming to be a Police Officer was not in uniform. No badge or identification was displayed by Defendant Muller at this point.

20.     Defendant Muller, who still had not shown Mr. Kelly any police identification, demanded Mr. Kelly to produce a form of identification. Despite not being fully convinced this person was a police officer, out of fear for his own safety, Mr. Kelly complied.

21.     Never exhibiting any form of respect or professionalism, Defendant Muller then commanded Mr. Kelly to tell him where he was coming from. Mr. Kelly truthfully stated that he was coming from 7/11 and showed the driver his ATM receipt from 7/11.

22.     Defendant Muller stated to Mr. Kelly that he needed to know if he had anything on him because he was looking for a suspect for a robbery. Even at this point, Defendant Muller did not show Mr. Kelly any police identification or a badge.

23.     Then, without Mr. Kelly's permission Defendant Muller proceeded to put his hands on Mr. Kelly and pat him down and search inside of his pockets. Mr. Kelly verbally objected to this search as he did not know who this person claiming to be a police officer really was. However, Defendant Muller who had not shown any police identification continued his unauthorized and wrongful search.

24.     In further fear of his safety, Mr. Kelly attempted to separate himself from this person and resume his walk home. Defendant Muller viciously grabbed and held on to Mr. Kelly. Stunned and fearful by the actions of this person claiming to be a police officer, Mr. Kelly, in self defense, attempted to pull his arms out of the attacker's grasp. In response, Defendant Muller began to violently punch and kick Mr. Kelly as Mr. Kelly attempted to protect himself and ward off the

unprovoked and unlawful attack. When Mr. Kelly attempted to flee from the vicious attack, he was tased by Defendant Muller.

25.     Although shocked by the electricity of the taser, Mr. Kelly managed to take the taser's electric probes out his body. Defendant Muller did not stop there, he wrongfully and brutally tased Mr. Kelly again. The second time Defendant Muller intentionally attempted to tase Mr. Kelly it did not shock him.

26.     Subsequently, Muller continued his attack of Mr. Kelly by physically throwing him down on the ground and brutally punching him multiple times in his face.

27.     Defendant Muller momentarily stopped his ferocious assault on Mr. Kelly and stood up. In an attempt to flee and get away from this person who attacked him, and had not identified himself as a police officer, Mr. Kelly stood up to retreat from the vicious encounter. Defendant Muller, at that point, took out his 40 caliber gun and shot Mr. Kelly in the chest/torso. Defendant Muller use of deadly force was inexplicably excessive and unnecessary as Mr. Kelly was unarmed and retreating from the attack caused by Muller.

28.     Although Mr. Kelly had a 40 caliber bullet lodged in his body, in a callous disregard for Plaintiff's life, Defendant Muller's ruthless continuance of his brutal actions toward Mr. Kelly did not cease. Defendant Muller then forced Mr. Kelly, under duress of further violence, to move himself from the middle of the road where he had been shot to the grass.

29.     After the vicious attack and shooting by Muller, Mr. Kelly was informed that his attacker was Kevin Muller, an off-duty Suffolk Police Officer who had covered up and/or was not wearing his police uniform.

30.     At the time of his contact with Plaintiff, Defendant Muller was not driving a marked police car. Muller was driving his personal vehicle pick-up truck. Upon information and belief, Defendant Muller was at a bar in Patchogue before his attack on Mr. Kelly and had been consuming alcohol.

31.     At or around 2:21am, on December 3, 2018, Mr. Kelly was charged with Obstructing Governmental Administration in the second degree, allegedly violating NY Penal Law §195.05.

32.     Following the use of deadly and unnecessarily violent force, Mr. Kelly was transported to Long Island Community Hospital.

33.     Due to the excessive force of Defendant Muller, Mr. Kelly was required to undergo emergency surgery to remove the bullet fragments from his chest/torso and have his entire spleen removed.

34.     In addition to those injuries, Mr. Kelly suffered, but not limited to, a fractured rib, a facial laceration, a transverse colon perforation, staples along his back and torso, and a small bowel perforation in two areas signifying the entry and exit wound of the bullet fired by Defendant Muller.

35.     After experiencing this traumatic event wholly due to the false arrest, abuse, excessive force and unlawful actions of Defendant Muller, Mr. Kelly was discharged from the hospital eight days later on December 11, 2018.

26.     Within those eight days, Mr. Kelly underwent numerous procedures to save his life including a laparatomy, splenectomy, having his fractured rib removed, and having a colostomy bag attached to his body which collects the fecal matter from his digestive tract.

36.     All of these events occurred due to the unlawful, unjustified and unauthorized excessive force and violative actions of Defendant Muller.

37.     This routine monthly trip to 7/11 to retrieve his SSD benefits turned into a forever traumatic event that almost costed Mr. Kelly his life. Mr. Kelly now has to live with a trauma of being tased and shot in a routine 7/11 visit to collect his SSD benefits. The abusive and violation of Plaintiff's rights exacerbated his mental health disability and forced him to use a colostomy bag for over a year to collect the fecal matter from his bowel movements.

38.     Muller's actions were excessive and were true to his character based on his history.

39.     Upon information and belief, Defendant Muller has been involved in numerous off duty incidents and has been involved in several other shootings. Defendant Muller's attack on Mr. Kelly was far from unusual based on his past actions.

40.     Following the traumatic and violent attack, Mr. Kelly suffered mental and emotional distress which included but not limited to exacerbating his schizophrenia, being diagnosed as bipolar and not being able to walk or drive down the block were he was a victim of excessive force and wrongfully beaten, tased, and shot. Although the colostomy bag was removed from Mr. Kelly in June of 2020, he still has to live with the physical scars on his body due to the unnecessary, unjustified and unauthorized actions by Defendant Muller.

41.     Originally Mr. Kelly was scheduled to be arraigned on December 4, 2018, the day after he was attacked and shot by Defendant Muller. Due to the brutal assault by Defendant Muller, the arraignment was adjourned to February 8, 2019. The arraignment was pushed back over two months to give Mr. Kelly time to heal from the gruesome attack he endured, and for him to be able to physically walk into the courtroom.

42.     On January 9, 2020, after traveling to and from court for over eleven (11) months, enhancing Mr. Kelly's anxiety on every trip, his Obstruction Charge was adjourned in contemplation

8

of dismissal (ACOD). Mr. Kelly was informed by his criminal defense attorney what an ACOD was pertaining to his criminal charge, but Mr. Kelly was not informed how it would affect his future civil claim(s).

43.     Since the ruthless and unjustified attack and shooting of Mr. Kelly, his life has never been the same. Immediately after December 3, 2018, Mr. Kelly was very angry, depressed, and isolated himself from others. Mr. Kelly would not talk to even his closest loved ones regarding the traumatic occurrence he endured. The aftermath of the shooting also made Mr. Kelly extremely self-conscious about his stomach from the colostomy bag and the scars on his torso. To this day, Mr. Kelly still gets pain and irritation from his stomach when consuming and digesting food.

44.     Although Mr. Kelly has learned to live with the wrongful shooting and time has healed some of the wounds, his daily life is still impacted by Defendant Muller's attack.

45.     Mr. Kelly's routine to retrieve his SSD benefits from the 7/11 store on Waverly Ave. is forever altered. Now, Mr. Kelly no longer travels at night. Any errand he has to run gets done while the sun is up or while there is light outside. Even in the daylight, Mr. Kelly is paranoid that he can be unjustifiable attacked by a police officer again.

46.     Since the attack, Mr. Kelly is more fearful of police and does not go anywhere near Suffolk County's 5th Precinct. More saliently, Mr. Kelly will not walk, drive, or otherwise return to the block where he was shot by Defendant Muller. Revisiting the scene of the unlawful shooting is too traumatic, too painful and too detrimental to his mental health for him to travel down that road again.

47.     Defendant Muller's violent and unnecessary attack and shooting of Mr. Kelly was a use of excessive and unjustifiable deadly force. Mr. Kelly complied with all of Defendant Muller's

requests, even though Muller never displayed any police identification. Defendant Muller would go

on to unlawfully shoot Mr. Kelly, then inexplicably command him to remove himself from the road

to the grass on the sidewalk. Defendant Muller's heinous and vicious actions drastically changed the

course of Mr. Kelly's life forever.

**AS FOR A FIRST CAUSE OF ACTION**
**42 U.S.C. § 1983 -**
**FALSE ARREST, FABRICATION OF EVIDENCE, ABUSE OF PROCESS,**
**UNREASONABLE AND EXCESSIVE USE OF FORCE**

48.     Plaintiff repeats, reiterates and realleges each and every allegation contained in

paragraphs 1 through 47 of this Complaint with the same force and effect as though fully set forth

herein.

49.     On December 3, 2018, Mr. Kelly was placed in fear of his life, falsely seized, falsely

detained and falsely arrested by defendants and subject to excessive and unreasonable force and

unlawful search and seizure.

50.     On December 3, 2018, Plaintiff was placed in fear of his life, falsely arrested, falsely

seized, and wrongfully charged even though Mr. Kelly fully cooperated and complied with

Defendant Muller's unreasonably and excessive commands.

51.     On December 3, 2018, Defendant Muller used unjustifiably excessive and deadly

force when he attacked, tased, and brutally shot Mr. Kelly, without being in any danger.

52.     On December 3, 2018, following Defendant Muller's wrongful shooting of Mr. Kelly

he subsequently commanded Plaintiff to remove himself from the road (where he was shot) to the

sidewalk. A request of this nature is a callous disregard to Mr. Kelly's life and self-worth.

53.      As a result of Defendant Muller's heinous December 3, 2018 attack of Mr. Kelly,

Plaintiff suffered physical injuries not limited to: undergoing emergency surgery to remove the bullet fragments from his chest/torso and have his entire spleen removed, a fractured rib, a facial laceration, a transverse colon perforation, staples along his back and torso,  a small bowel perforation in two areas signifying the entry and exit wound of the bullet fired by Defendant Muller, numerous procedures to save his life including a laparatomy, splenectomy, and having a colostomy bag attached to his body which collects the fecal matter from his digestive tract. Although the colostomy bag was removed in June of 2020, Mr. Kelly is very self-conscious about his torso due to the scar he has to live with for the rest of his life and until this day, Mr. Kelly still has excruciating episodes of pain while digesting food.

54. As a result of Defendant Muller's heinous December 3, 2018 attack of Mr. Kelly, Plaintiff suffered severe emotional and mental injuries not limited to exacerbating his schizophrenia, being diagnosed as bipolar and not being able to walk or drive down the block were he was a victim of excessive force and wrongfully beaten, tased, and shot. Now, Mr. Kelly no longer travels at night. Any errand he has to run gets done while the sun is up or while there is light outside. Even in the daylight, Mr. Kelly is paranoid that he can be unjustifiable attacked by a police officer again.

55. Due to the gruesome attack, Plaintiff's arraignment date was adjourned from December 4, 2018 to February 8, 2019, which Defendant County and Defendant Suffolk Police Department failed to dismiss the baseless Obstruction of Governmental Administration in the Second Degree charge. The false criminal charge leveled against Plaintiff caused Mr. Kelly severe anxiety to have to travel to court for eleven (11) months without knowledge of returning home after.

56. Upon information and belief, Defendant County and Defendant Suffolk Police Department had notice of Defendant Muller's past violence behavior regardless of Muller being on

11

or off duty.

57.     Defendant County and Defendant Suffolk Police Department failed to take any action to protect Mr. Kelly from being attacked and victimized by Defendant Muller.

58.     Defendant County and Defendant Suffolk Police Department failed to take any action to prevent this unlawful behavior by Defendant Muller.

59.     Upon information and belief, such seizure, arrest, and assault was ordered, condoned and authorized by Defendant County and Defendant Suffolk Police Department, with a callous, deliberate indifference to Plaintiff's known constitutional rights.

60.     Upon information and belief, the each Defendant Muller took an active role in creating and manufacturing the allegations made against Plaintiff in an intentional attempt to mask and coverup their wrongful actions and abuses of Plaintiff. Defendant Muller has abused the Legal system and process for their own benefit and self interest. With the complicity of Defendant County and Defendant Suffolk Police Department, Muller has maliciously prosecuted Plaintiff.

61.     As part of the false arrest, detention, and accusations, Defendant Muller caused Plaintiff to be seized, arrested, and held in a dangerous, near death position after being attacked and callously shot without probable cause and caused him to be deprived of his liberty, without due process and was further exposed to significant physical and mental injuries, disgrace, public humiliation and embarrassment.

62.     Defendant Muller knew at the time of Plaintiff's arrest, and at all times since then, that they were not in possession of any evidence consistent with and sufficient to establish his guilt and were based solely, or in part, on Defendants' disregard and discriminatory and violative actions due in part or in whole to his disability.

12

63.     Each of the Defendants acting under color of law, acted separately and in concert and without authorization of law. Each of the Defendants, separately and in concert with each other, acted willfully, knowingly and purposefully with the specific intent to deprive Plaintiff of his right to freedom from excessive force, illegal seizure of his person, causing an abuse of process and malicious prosecution as a result being engaged in by the Defendants.  All of these rights are secured to Plaintiff by the provisions of the due process clause of the Fifth and Fourteenth Amendments to the Constitution of the United States, the Fourth Amendment, and by 42 U.S.C. § 1983.

64.     Defendants fail to exercise any regard to Mr. Kelly's constitutional rights in falsely arresting, abusing the process, abusing, prosecuting,   coercing, threatening, and intimidating Plaintiff, and denying Plaintiff his right to be free from unreasonable search and seizure from the Defendants.  Defendant Muller, whose actions were authorized and/or condoned by Defendants County and Suffolk Police Department, knew or should have known he was violating laws of the State of New York and those statutory and constitutional rights set forth herein causing harm to Plaintiff.

65.     As a direct and proximate result of the aforesaid acts of the Defendants Plaintiff suffered great physical harm, mental anguish and violations of rights from then until now and he will continue to so suffer in the future, having been greatly humiliated and mentally injured, as a result of the foregoing acts of the Defendants.

66.     Plaintiff was forced and continues to incur great expense due to the filing of this complaint, medical treatment, for attorney's fees, and other expenses in addressing the multiple wrongful and abusive acts by the Defendants, which have been a serious burden on Plaintiff.

67.     That by reason of the foregoing, Plaintiff has been placed in fear of his life, suffers

significant physical and emotional damages, distress, pain, suffering, loss of self esteem, self doubt

and has been  exposed to disgrace, public humiliation and embarrassment, and was deprived of his

constitutional rights and has been damaged in the sum of Five Million ($5,000,000.00) Dollars.

### AS FOR A SECOND CAUSE OF ACTION
### 42 U.S.C. §§ 12131-12134, TITLE II OF THE AMERICAN WITH DISABILITIES ACT (ADA) AND SECTION 504 OF THE REHABILITATION ACT

68.     The Plaintiff repeats, reiterates and realleges each and every allegation contained in

paragraphs 1 through 67 of this Complaint with the same force and effect as though fully set forth

herein.

69.     Plaintiff is, as set forth herein,  a person with a disability as defined under 504 of the

Rehabilitation Act and 42 U.S.C. §§ 12131-12134, Title II of the American with Disabilities Act

(ADA).

70.     Plaintiff was denied the benefits of the services, programs, or activities of Defendants

County, Suffolk County Police Department, and Muller subjected Mr. Kelly to discrimination by due

to and on account of his disability of schizophrenia.

71.     Plaintiff was allowed to be beaten, tased, shot, unlawfully charged, arraigned,

deprived of his rights and other  benefits, and denied the normal conditions to which he was entitled

due to and on account of his disability.

72.     When Defendant Muller unlawfully searched Mr. Kelly he was put on notice that Mr.

Kelly had a disability when he displayed the receipt from the 7/11 store on Waverly Avenue showing

that Mr. Kelly had recently made a withdrawal of his SSD benefits.

73.     Defendants County and Suffolk County Police Department receives Federal financial

assistance.

74.     That the false arrest, excessive force and violation of the laws of the State of New

York and Plaintiff's civil rights were brought about and caused by the actions of Defendants and that

the same were a clear and intentional abuse of process causing Plaintiff damages.

75.     That by reason of the foregoing, Plaintiff has been placed in fear of his life, suffers

significant physical and emotional damages, distress, pain, suffering, loss of self esteem, self doubt

and has been  exposed to disgrace, public humiliation and embarrassment, and was deprived of his

constitutional rights and has been damaged in the sum of Five Million ($5,000,000.00) Dollars.

**AS FOR A THIRD CAUSE OF ACTION**
**42 U.S.C. § 1983 - MUNICIPAL LIABILITY**

76.     The Plaintiff repeats, reiterates and realleges each and every allegation contained in

paragraphs 1 through 75 of this Complaint with the same force and effect as though fully set forth

herein.

77.     The vicious beating, tasing, shooting, abuses due to mental illness, and other wrongful

acts taken by and on behalf of Defendants County, Suffolk County Police Department and Muller

constituted unreasonable and excessive force by Defendant Muller, as well as abuse of process by

Defendants collectively. Such actions were negligent, reckless, careless, unreasonable and

unauthorized, as Defendants has a duty not to subject Plaintiff to abuse, battery, and excessive force,

but failed to prevent same and breached their duty. This punishment was in violation of the rights

promised to PLAINTIFF under 4th, 5th, and 14th Amendments to the United States Constitution.

78.     As a consequences of Defendants' wrongful actions, intentional, negligent, and

reckless behavior, and violations of state and federal laws, Plaintiff was deprived of his freedom, was

seriously injured, was subjected to great fear, terror, personal humiliation and degradation, and

suffered and continues to suffer physical pain and impairment, mental and emotional distress, as a

result of the aforesaid unlawful conduct of Defendants.

79.     Municipalities have a duty to protect citizens and persons within their jurisdiction,

but prior to December 3, 2018, and since, Suffolk County has permitted and tolerated a pattern and

practice of unjustified, unreasonable and illegal unreasonable and illegal uses of deadly force by

officers such as and in similar positions of Defendant Muller and other ongoing violations by officers

of Suffolk County and Suffolk County Police Department and other local police departments within

the County.  Such beatings and illegal use of deadly force were improper, and the officer, Defendant

Muller, who was involved was not seriously prosecuted, disciplined, or subjected to restraint, and

such incidents were in fact covered up with official claims that the beatings and use of force were

justified and proper, thereby illustrating, suggesting, inferring, and implying municipal supervisors'

acquiescence in the unconstitutional behavior of subordinate police officers. As a result, Defendant

Muller and other officers in the same or similar position within their jurisdiction are and were caused

and encouraged to believe that individuals could be beaten, tased, shot and abused under

circumstances not requiring the use of excessive force, and that such beatings would in fact be

permitted by Defendants Suffolk County and Suffolk County Police Department.  Further, as a result

of the violent beatings and illegal use of deadly force by Defendants, municipal liability is inferred.

Such violent and illegal acts by Defendants imply an official policy encouraging and/or condoning

the use of such force.

80.    In addition to permitting a pattern and practice of improper beatings and abuses of

individuals such as Mr. Kelly in Suffolk County, Defendants Suffolk County, Suffolk County Police

Department, and Muller, Defendants have failed to maintain a proper system of investigation of all

incidents of unjustified beatings, shootings, and excessive use of force by police officers.

81.    Suffolk County has failed to respond to the continuing and urgent need to prevent,

restrain, and discipline police officers who wrongfully, beat, use excessive force, and abuse persons

in their custody and control. Therefore, Suffolk County is liable under 42 U.S.C. § 1983 because the

County has had actual and/or constructive knowledge of the patterns of abuse and excessive force against persons in their custody by its police officers, employees, and/or agents in violation of the United States Constitution, and because of Defendants Suffolk County, Suffolk County Police Department, and police officers such as and including Muller have created an un-meaningful policy and custom for reviewing complaints of police officer misconduct. Because of such blatant inaction and acquiescence to denial of constitutionally protected rights of Mr. Kelly and others in the same or similar position as Plaintiff, Defendants utilize a flawed policy to continue their patterns of physical abuse, excessive force, and discriminatory legal enforcement, all in violation of the Plaintiffs rights.

82.    As a consequence of Defendants' wrongful actions, willful neglect, callous indifference, negligent behavior and violation of state and federal laws, Plaintiff was deprived of his freedom, was injured, was subjected to unlawful search and seizure, was subjected to mental anguish, suffered great fear, embarrassment, personal, humiliation, and degradation. All of these rights are secured to Plaintiff by the provisions of the due process clause of the Fifth and Fourteenth Amendment; the Fourth Amendment to the United States Constitution as well as the protections afforded under 42 U.S.C. § 1983.

83.    Defendants Suffolk County, Suffolk County Police Department, and Muller have maintained a system of review of unjustified beatings, shooting and excessive use of force by police officers that has failed to identify the improper brutality by police officers and failed to subject officers who beat and/or brutalized citizens to discipline, closer supervision, retraining, or restraint, to the extent that it has become the custom of the Suffolk County to tolerate the improper beatings and other wrongful actions by Defendant Muller and countless officers in the same or similar position as him.

17

84.     Further, Suffolk County, who maintains either supervisory and/or decision-making responsibility, permitted a practice of improper investigation, supervision, discipline and hiring of Defendant Muller and officers in the same or similar position as him. The actions of Defendant Muller have evidenced a failure to train or supervise properly. Upon information and belief, Muller's actions were excessive and were true to his character based on his history. Upon information and belief, Defendant Muller has been involved in numerous off duty incidents and has been involved in several other shootings. Defendant Muller's attack on Mr. Kelly was far from unusual based on his past actions. Such failure by supervisors has amounted to gross negligence on the part of Defendants Suffolk County and Suffolk County Police Department. Defendant Suffolk County also refused and failed to prosecute the Defendant officers thereby improperly and in violation of the Plaintiffs rights, neglected, failed, and/or delayed in administering an investigation of the circumstances surrounding the instant matter and neglected, failed, and/or delayed in charging any wrong doers.

85.     Upon information and belief, specific systemic flaws in the Suffolk County universely flawed review process include, but are not limited to, the following:

a.     Preparing reports regarding investigations of beatings incidents as routine point-by-point justifications of correction officer actions, regardless of whether such actions are justified;

b.     Police officers investigating beatings systemically fail to credit testimony by non-officer witnesses, and uncritically rely on reports by police officers involved in the incident;

c.     Police officers investigating beatings fail to include in their reports relevant factual information which would tend to contradict the statements of the police officers involved;

d.     Supervisory Police officers at times issue public statements exonerating correction officers for excessive use of force, improper beatings, and use of unnecessary and excessive force before the investigation of the incident by the corrections facility has been completed;

e.    Reports in brutality cases are not reviewed for accuracy by supervisory officers.  Conclusions are frequently permitted to be drawn on the basis of clearly incorrect or contradictory information.

86.    The foregoing acts, omissions, systemic flaws, policies and customs of the Defendants Suffolk County and Suffolk County Police Department encouraged and condoned Defendant Muller to believe that brutality and other improper actions would not be aggressively, honestly and properly investigated, with the foreseeable result that officers are most likely to use excessive force in situations where such force is neither necessary nor reasonable.

87.    As a direct and proximate result of the aforesaid acts, omissions, systemic flaws, policies, practices and customs of the Defendants Suffolk County, Suffolk County Police Department, and Muller unjustifiably beat and brutalized Plaintiff, all in violation of his civil and constitutional rights, and Plaintiff was deprived of his freedom, was seriously injured, was subjected to great fear, terror, personal humiliation and degradation, and suffered and continues to suffer physical pain and impairment, mental and emotional distress, as a result of the aforesaid unlawful conduct of Defendants. This is an ongoing pattern of behavior adopted and condoned by Defendants Suffolk County, Suffolk County Police Department, and Muller.

88.    Defendant Suffolk County was reckless, careless, intentional, negligent, and/or deliberately indifferent in the training, hiring, administration, discipline and supervision of the police officers, including Defendant Muller, with respect to the use of deadly force against law abiding citizens and mentally ill and disabled persons, abusing and bringing of charges against mentally ill, impaired and disabled persons, and the recognition and preservation of the civil and constitutional rights of impaired and disabled persons.

89.    That by reason of the foregoing, Plaintiff has been placed in fear of his life, suffers significant physical and emotional damages, distress, pain, suffering, loss of self esteem, self doubt

and has been  exposed to disgrace, public humiliation and embarrassment, and was deprived of his

constitutional rights and has been damaged in the sum of Five Million ($5,000,000.00) Dollars.


## RELIEF

**WHEREFORE**, PLAINTIFF demands judgment against DEFENDANTS:

a.    On the First Cause of Action in the sum of five million ($5,000,000.00) dollars.

b.    On the Second Cause of Action in the sum of five million ($5,000,000.00) dollars.

c.    On the Third Cause of Action in the sum of five million ($5,000,000.00) dollars.

d.    Punitive damages in the amount of twenty million ($20,000,000.00) dollars.

e.    Injunctive relief, requiring Defendants to correct all past violations of federal law as alleged herein; to enjoin Defendants from continuing to violate federal law as alleged herein; and to order such other injunctive relief as may be appropriate to prevent any future violations of said federal laws;

f.    An order granting such other legal and equitable relief as the court deems just and proper.

g.    Award costs of this action including attorney's fees to the PLAINTIFF pursuant to 42 U.S.C. § 1988 and any and all applicable attorney's fees and costs as imposed by state-law.

**A JURY TRIAL IS DEMANDED**


Dated: Hempstead, New York
      December 01, 2021

                              Respectfully Submitted,
                              LAW OFFICES OF
                              FREDERICK K. BREWINGTON

            By: _____
                              FREDERICK K. BREWINGTON
                              *Attorneys for PLAINTIFF*
                              556 Peninsula Boulevard
                              Hempstead, New York 11550
                              (516) 489-6959